PETREE, David and Petree,
Diana L., his wife

v.

VICTOR FLUID POWER, INC.

Appeal of David PETREE and Diana
Petree, Appellants.

No. 86–1707.

United States Court of Appeals,
Third Circuit.

Argued June 16, 1987.

Decided Sept. 23, 1987.

As Amended Oct. 28, 1987.

Joseph Lurie (argued), Richard M. Jurew-icz, Galfand, Berger, Seneksy, Lurie & March, Philadelphia, Pa., for appellants.

George J. Lavin, Jr., Steven B. Kantrow-itz (argued), George J. Lavin, Jr. Associ-ates, Philadelphia, Pa., for appellee.

Before SEITZ and MANSMANN, Circuit Judges, and DEBEVOISE, District Judge.[*]

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal we review the district court's entry of a directed verdict, in a products liability action, on the question of whether the defendant was liable for the plaintiff's injuries because of the defendant's failure to equip its hydraulic press with a warning regarding a hazard of ejection of scrap metal during operation. As a preliminary matter, we find no abuse of discretion in the district court's refusal to allow the plaintiff to amend the pretrial order to include negligent failure to warn as a theory of recovery. Nor do we find that the district court abused its discretion by applying Fed.R.Evid. 407 to exclude from evidence a warning decal which defendant recently began affixing to its new hydraulic presses. While Rule 407 would still allow use of the decal for impeachment purposes, we need not address the plaintiffs' arguments in that regard in light of our ultimate disposition of this appeal. Upon examining the record we have determined that, under Pennsylvania law of strict tort liability, the plaintiffs' evidence was sufficient to require jury deliberation on whether the offending machine was defective when it was sold because it was not accompanied by an adequate warning of a danger involved in its use. Therefore, we will remand the case for a new trial on the issue of strict liability for failure to warn.

## I.

Plaintiff David Petree brought this action to recover for injuries he sustained at Empire Steel Castings, Inc., his place of employment, when he was struck in the side of the face by a steel spacer bar which was ejected from a hydraulic press being operated by his fellow employee, Barry Strunk. The hydraulic press had been manufactured and sold to the plaintiff's employer in 1959 by the predecessor corporation to the defendant Victor Fluid Power, Inc.

Petree filed an action for damages in district court pleading both strict liability and negligence. Specifically, Petree complained that Victor Fluid Power's predecessor breached its duty to the plaintiff by (1) the improper design, manufacture and distribution of the hydraulic press; (2) the failure to provide the product with proper safety equipment; and (3) the failure to warn adequately of the dangers inherent in the use of the product.

Victor Fluid Power claimed in defense that the machine was not unreasonably dangerous when it left the manufacturer's possession. The defendant claimed that at the time of the accident the press was not being used as it was intended to be used nor was it being misused in a reasonably foreseeable way. The defendant argued that the accident was caused by substantial changes in the press and by improper maintenance which could not have been foreseen by the manufacturer.

At the pretrial conference, counsel for Petree informed the court that he would proceed under a theory of strict liability alone. The plaintiff claimed that the press was defective in that its design did not incorporate an interlock guarding system. The plaintiff claimed in the alternative that the product was defective because, at the time it was sold, it did not contain a warning regarding the possibility that it would forcefully eject pieces of scrap metal.

The pretrial order accordingly did not include the negligence theory. Nevertheless, counsel for the plaintiff briefed the issue for trial, arguing that the defendant should have warned the plaintiff's employer of the danger when, in 1980, the defendant began affixing a warning decal to their newly manufactured hydraulic presses. The plaintiff requested a jury charge that "the manufacturer's duty to warn of a defect or dangerous condition continues

[*] Honorable Dickinson R. Debevoise of the United States District Court for the District of New Jersey, sitting by designation.

even if defects are discovered after the initial sale."

Immediately prior to trial, a conference was held in chambers concerning motions by the plaintiff, first, for amendment of the pretrial order to add a theory of negligent failure to warn, and second, for admission into evidence of the warning decal which the defendant had begun to supply in 1980 with its new hydraulic presses. The district court refused to allow either the amendment or the admission of the decal. The district court denied the motion to amend on the basis that the negligence theory asserted by the plaintiff, namely a continuing duty to warn of an after-discovered hazard from using the product in a particular manner, had no support in Pennsylvania law. The court said:

> I will not permit an amendment to the final pretrial order to permit plaintiff at this late stage to assert a negligence theory which is based on a continuous duty or an ongoing duty to warn.... [T]his is not only a negligence theory, but it's almost a unique type of negligence theory. It's a new claim, and Mr. Lavin would have to prepare for it on virtually no notice. There is no Pennsylvania law in support of this new claim. Apparently almost a total absence of law elsewhere in support of the new claim.

Appendix at 97a.

In refusing to admit the 1980 decal, the court observed that the decal was not relevant in a § 402(a) case, and that Fed.R. Civ.P. 407 would apply to exclude it. The judge acknowledged a possibility that the decal might be admissible on an impeachment theory.

At trial the defendant moved for a directed verdict at the conclusion of the plaintiff's case pursuant to Rule 50(a) Fed.R. Civ.P. One ground for the motion was that the plaintiffs had failed to establish a prima facie case with regard to their claim that the press was defective at the time of sale due to a failure to warn of a propensity to eject scrap metal. The district court denied the motion initially.

During a conference in chambers immediately prior to closing arguments, the district court once again refused to admit the 1980 decal into evidence, but the court directed that the decal become part of the record for purposes of an appeal. The district court further reconsidered and granted the defendant's motion for a directed verdict on the issue of failure to warn. Upon returning to the courtroom, the trial judge instructed the jury:

> May I tell you at this time that for reasons that do not concern you, I have made a ruling on the law that the warning issue is not in the case.
>
> Therefore, you will not be concerned and should not give any consideration to evidence produced by the parties during this trial which related to Plaintiff's failure to warn theory. The matter of warnings is simply not in the case.

Appendix at 538a. The court, accordingly, did not submit the issue to the jury.

The jury was instructed:

> A product can be defective in a number of ways, only one of which is relevant here: A defective design.
>
> When I say a product may be defective in design, I mean that it is designed in a manner which makes it unsafe for its intended or reasonably foreseeable use. The product may conform exactly to its intended design and yet be unsafe.
>
> The question you must decide is whether the design included every element necessary to make it safe for its intended or reasonably foreseeable use. Even if the danger is an obvious one, the manufacturer has a duty to install safety features to eliminate the risk and to make it safe for its intended or reasonably foreseeable use.

The jury answered "no" to the following special interrogatory: "Do you find by a preponderance of the evidence, that the 200-ton shop press was in a defective condition, that is unsafe for its intended or reasonably foreseeable use, when it left the possession of Rogers Hydraulic, Inc. in 1959?" Judgment for the defendant was entered in accordance with the verdict, and the plaintiff appealed.

## II.

■ We must first determine whether the district court erred in refusing to permit the plaintiff to amend the pretrial order to add a negligence claim. We will not disturb the decision of the district court absent a clear abuse of discretion. *Ely v. Reading Co.,* 424 F.2d 758 (3d Cir.1970).

Federal Rule of Civil Procedure 16(e) provides that a final pretrial order "shall control the subsequent course of the action unless modified by subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice." Under the local rules in effect, the pretrial order supersedes the pleadings, and amendments will be allowed only in exceptional circumstances to prevent manifest injustice. U.S.D.C.E.D.Pa. Local R.Civ.P. 21(d)(2)(a).

The finality of the pretrial order contributes substantially to the orderly and efficient trial of a case. We will find an abuse of discretion in the district court's failure to permit an amendment of the pretrial order on the day of trial, only if the amendment was required to prevent manifest injustice.

The final pretrial order here clearly stated that the plaintiff would proceed under a theory of strict liability in tort pursuant to § 402A of the Restatement (Second) of Torts. The district court based its refusal to allow amendment to add a negligence theory on the finality of the pretrial order under the rules, and on the fact that there was no Pennsylvania precedent for the particular negligence theory proposed to be added, *i.e.,* that a manufacturer has a continuing duty to warn purchasers of defects after the product has left the control of the manufacturer.

The plaintiff argues that, for various reasons, no prejudice to the defendant would result from permitting the proposed amendment. However, this argument is inapposite because the standard is, conversely, that amendment *shall* be permitted only to *prevent* injustice. In reviewing an exercise of discretion by the district court, we need not evaluate the potential prejudice to the nonmoving party unless it appears that refusal to amend will result in manifest injustice to the moving party. The plaintiff has offered no compelling reason why the proposed theory of liability was not disclosed at the pretrial conference. Therefore, we find no abuse of discretion in the district court's refusal to grant the plaintiff's eleventh hour motion to amend the pretrial order.

## III.

We turn now to the question of whether the district court erred in granting a directed verdict in favor of the defendant on the theory that the press was defective at the time of its manufacture due to the failure to warn of danger inherent in its use. In reviewing the directing of a verdict by the district court, we examine the record in the light most favorable to the plaintiff, and we review specific evidence in the record and all inferences reasonably arising therefrom. We must determine whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief. *Denneny v. Siegel,* 407 F.2d 433, 439 (3d Cir.1969).

Section 402A of the Restatement (Second) of Torts, which has been adopted by Pennsylvania courts, imposes strict liability on the seller of any product in a defective condition unreasonably dangerous to the user or consumer. *Overpeck v. Chicago Pneumatic Tool Co.,* 823 F.2d 751, 753 (3d Cir.1987).

■ Under § 402A, even if properly designed, a product may be found to be defective and unreasonably dangerous if its manufacturer fails to warn the user or consumer of latent dangers in the product's use or operation. *Id.* There is no question that, under Pennsylvania law, a manufacturer may be liable for failure to warn even when a product is perfectly designed and manufactured. *Sherk v. Daisy–Heddon,* 498 Pa. 594, 450 A.2d 615 (1982).

To submit a strict liability claim to the jury under § 402A, the plaintiff must offer evidence that the product was defective, that the defect existed while the product

was still in the control of the manufacturer or retailer, and that the defect was the proximate cause of the plaintiff's injuries. *Barris v. Bob's Drag Chutes & Safety Equipment, Inc.,* 685 F.2d 94, *appeal after remand,* 717 F.2d 52 (3d Cir.1982).

The record does not reveal the reasoning of the district court in directing the verdict. The defendant offered two grounds for its motion. The first was that there was no evidence that a projectile hazard existed until the press had been substantially changed and subjected to abnormal use and faulty maintenance by the plaintiff's employer. Second, the defendant argued that the plaintiff had failed to establish a prima facie case on the element of causation of the plaintiff's injuries through the failure to warn. We examine each argument in turn.

### A.

■ The record does contain evidence that the plaintiff's employer and the operators of the press knowingly used the press with a bent ram and with oil leaking down the ram. However, even alteration or misuse of the consumer does not provide an absolute defense to a charge of strict liability. Under Pennsylvania law, only unforeseeable contributory conduct by the consumer will insulate the manufacturer from strict products liability, and the question of foreseeability is for the jury. *Greiner v. Volkswagenwerk Aktiengesellschaft,* 540 F.2d 85, 95 (3d Cir.1976).

There is adequate evidence of record from which the jury could find a latent danger of ejection of metal due to the foreseeable improper set-up or misuse of the press by the purchaser or its employees. The plaintiff's expert witness, James McCarthy, testified that there existed a hazard at the time the press left the manufacturer that an operator would perform the sequence of steps necessary to set-up the machine in an improper manner, *i.e.,* the press would be used with spacers and with the bolster table at its lowest position, which would permit a projectile to be ejected or expelled from the press during opera-

tion. McCarthy opined that while the machine was safely designed to be operated with the table moved up and directly beneath the ram, human error in adjustment of the bolster table was foreseeable, necessitating a warning as to the hazard associated therewith. McCarthy further testified that the hazard from operator error could be reduced through the use of an interlocking guarding system to cause the machine to be inoperable absent the proper sequence of events during set-up and without a shield being in place to contain projectiles. McCarthy opined that the machine was not equipped with everything necessary to be safe for its intended or foreseeable operation without either a guarding system or a warning of the hazard existing without the guard.

### B.

■ Under Pennsylvania law, although the question of causation is ordinarily for the jury, if relevant facts are not in dispute and the remoteness of any causal connection between the defendant's conduct and the plaintiff's injury clearly appears, the question becomes one of law so that a directed verdict on the question of causation would be appropriate. *Powell v. J.T. Posey Co.,* 766 F.2d 131 (3d Cir.1985), *Conti v. Ford Motor Co.,* 743 F.2d 195 (3d Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 784 (1985). In order for the plaintiff to raise a jury question as to whether the failure to warn of latent dangers was the cause-in-fact and proximate cause of his or her injuries, there must be enough evidence to support a reasonable inference, rather than a guess, that a warning may have prevented the accident. *Id.*

The defendant argues that the absence of a warning could not have caused the accident because the users of the press were aware of the hazard before the plaintiff's accident, and the plaintiff presented no direct evidence that any warning would have been heeded by the operators of the press.[1]

---

1. The defendant finds unwarranted significance in the fact that no particular warning was advo-

Where the case against a manufacturer is predicated on failure to warn against foreseeable misuse of a product by the consumer, but the record demonstrates that the user or consumer is legally chargeable with sufficient appreciation of the nature of the risk involved in his conduct, the manufacturer is not responsible for the consequences of the misuse, despite any contention that the manufacturer should have warned of the dangerous propensity. *Sherk v. Daisy–Heddon, A Division of Victor Comptometer Corp.,* 498 Pa. 594, 450 A.2d 615 (1982).

The record does contain the testimony of several witnesses to the effect that, before the time of the plaintiff's accident, the plaintiff's employer and operators of the machine were aware of several prior instances of work pieces or spacer bars having been ejected from the press. However, the fact that the employer and operators may have been aware of a projectile hazard does not necessarily establish that they were fully aware of the risk of bodily injury, or of the extent to which their own conduct could contribute to that risk, so as to be legally chargeable with the consequences.

In a case predicated on causation of injury by the failure to warn under Pennsylvania strict liability law, the plaintiff is only required to show by a preponderance of the evidence that the defendant's conduct may have been a substantial factor in causing harm to the plaintiff, *i.e.,* may have changed the unsafe behavior which ultimately contributed to the plaintiff's injury. *Powell v. J.T. Posey Co.,* 766 F.2d 131 (3d Cir.1985).[2]

The record contains evidence from which a jury could find that the purchaser of the press and its employees were not aware of the hazard to the full extent that an adequate warning might have provided. For example, Barry Strunk, the operator of the press on the day of the plaintiff's injury, testified on cross-examination that he had only once experienced a part coming off the press. He testified that the part had "just rolled off" and that no one had been injured. He further testified that after that incident he was aware of some hazard in operating the equipment, but that he never considered the possibility of someone else getting hurt.

John Fatula, who was employed by Empire Steel as a press operator and inspector from 1968 until his retirement in 1983, testified that he had experienced one incident in which something was expelled from the press. He testified that on that occasion the spacer was not set in straight and "[w]hen you put the weight on it, she just gave out." He said, "It just went off to the side. It didn't go very far," and he described the occurrence as "just a small incident."

Herbert Bagenstose, Supervisor of the Cleaning Shop, testified that he was unaware of the projectile hazard. Jack Fisher, a maintenance supervisor of the Cleaning Shop, testified that he was unaware of the projectile hazard and had never observed or experienced parts being ejected from the press.

The jury was asked to determine whether the machine was safe for its intended use when it left the manufacturer. However the jury was not instructed that it might find a defect in the failure to warn of hazards which could not be eliminated, and in fact was specifically told by the judge that the issue of warnings was not in the case. Therefore the jury's answer to

---

cated by the plaintiff's experts. In order to obtain jury instruction on failure to warn, a plaintiff is not required to produce competent evidence on what would have constituted an adequate warning from the manufacturer. *Greiner v. Volkswagenwerk Aktiengesellschaft,* 540 F.2d 85 (3d Cir.1976), *on remand* 429 F.Supp. 495 (E.D.Pa.1977).

**2.** The plaintiff argues that the presumption established by § 402A, *i.e.,* that an adequate warning will be read and heeded, should benefit an injured plaintiff in establishing causation where a latent danger exists and no warning or inadequate warning is provided, just as that presumption benefits the manufacturer when an adequate warning is given. *See § 402A comment j.* We need not reach this issue because the presumption would vanish with the introduction of evidence of the user's prior knowledge of the hazard. It would be for the jury to decide which of the possible inferences to draw.

the interrogatory can only mean rejection of the plaintiff's claim that the press was defectively designed. A finding of failure to warn does not require a finding of defective design. *Greiner v. Volkswagenwerk Aktiengesellschaft,* 540 F.2d at 92.

There is no question that ejection of metal from the press caused the plaintiff's injuries. There is also evidence from which the jury could find that foreseeable misuse or improper set-up of the machine was a contributing factor. Therefore, a jury could find that foreseeable mistake or misuse by the purchaser or its employees might have been avoided had the machine been accompanied by an adequate warning as to the extent of the hazard created by improper set-up or operation of the press.

None of the employees testified that he had experienced an event where a projectile was expelled with enough force to cause injury. Therefore, a jury could reasonably have inferred that, had a warning accompanied the machine, the operators may have paid closer attention to set-up procedures or the employer may have provided a guard. To the contrary, Barry Strunk testified that on the day of the accident he had expressed concern about the condition of the machine and was assured by his foreman that it was safe to operate.

Because there was sufficient evidence to go to the jury on the elements necessary to establish strict liability for failure to warn, the refusal to charge the jury on the possibility of a no-warning defect requires that we remand the case for a new trial on that issue. *See Greiner v. Volkswagenwerk Aktiengesellschaft,* 540 F.2d 85 (3d Cir. 1976).

### IV.

█ Finally we address the question of whether the district court erred in excluding evidence of a warning decal which the defendant is alleged to have affixed to presses manufactured after the sale of the offending press but before the plaintiff's injury. Pretrial and trial rulings regarding the admission of evidence are reviewable under the abuse of discretion standard. *In re Japanese Electronic Products,* 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds, Matushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The decal offered by the plaintiff was one which the defendant allegedly began affixing to all of its newly manufactured hydraulic presses in 1980. The decal warned against operation of the machine by anyone unfamiliar with the operation and safety instructions provided in the owners manual. It also warned of an ejection hazard from improper installation or alignment of work pieces, ram extensions, spacers or adapters, or from the use of pressure exceeding the structural strength of the selected tooling members. The decal also represented graphically that an operator or bystander might be injured by an expelled part.

The plaintiff argues that the decal is admissible because the design of the press has not changed since 1959 and the decal shows that the defendant was aware of the projectile hazard before the time of the plaintiffs injury in 1983.

In response, the defendant argues that, in a strict liability case, admission of the decal is foreclosed under Federal Rule of Evidence 407 because it is evidence of a remedial measure taken *after* the offending press left the manufacturer's control.[3] The plaintiff argues that the decal was admissible because it was a remedial measure taken *before* the plaintiff was injured. The plaintiff further argues that the decal was admissible to impeach the defendant's expert witness, William Eaton, who allegedly denied the feasibility of precautionary measures.

---

3. HH Rule 407 provides as follows:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

We have recently reaffirmed our prior holding that Fed.R.Evid. 407 is applicable to products liability actions based on § 402A of the Restatement. *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982). We held in *Josephs* that evidence of a warning sticker placed on an offending press, subsequent to the date of injury but cautioning against operation of the press in the manner which the plaintiff had used on the day of his injury, is inadmissible under Rule 407. We turn now to the question of the relevance or admissibility, in a strict products liability action, of remedial measures taken subsequent to the date of sale but prior to the accident, an issue not discussed in *Josephs.*

Exclusion of evidence of subsequent remedial measures is mandated under Rule 407 only when it is offered as proof of an admission of negligence or culpable conduct. As a general matter, questions of negligence or fault are irrelevant in a strict liability case. Under Pennsylvania law, strict liability is determined by the defective nature of a product decided by reference to the date of sale. *Josephs v. Harris Corp.*, 677 F.2d at 988. Since the implementation of remedial measures with the sale of a newly manufactured product is consistent with an inference that the older product of similar design was defective as well, such evidence would be admissible if the only criterion were its relevancy. However, where the manufacturer's liability is predicated on a theory of failure to warn of danger from improper use of a product by the customer, the negligence concept of foreseeability has insinuated itself into the strict liability cause of action. The manufacturer is liable only for consequences of *foreseeable* misuse by the customer. *Greiner v. Volkswagenwerk Aktiengesellschaft*, 540 F.2d at 95. The danger from a particular use by the customer must be foreseeable at the time of sale. Consequently the policies supporting Rule 407 counsel exclusion of proof of subsequent remedial measures when offered in strict liability cases as an admission that the product was defective at the time of sale.

Two grounds support Rule 407. First, Rule 407 rejects the suggested inference that fault is admitted when remedial measures are taken subsequent to an injury. Such conduct is said to be equally consistent with injury through accident or contributory negligence. Rule 407, Notes of Advisory Committee on Proposed Rules. Similarly, the fact that a warning of possible injury from improper use is affixed to newly manufactured presses before an injury is equally as consistent with knowledge gained through experience as with an inference that such misuse was foreseeable when older products were sold.

The second ground supporting Rule 407 is the social policy of "encouraging people to take or at least not discouraging them from taking, steps in furtherance of added safety." When safety measures are taken after someone has been injured, we routinely exclude evidence of them to encourage people to take such measures whether or not they are at fault. The policy is equally as supportive of exclusion of evidence of safety measures taken before someone is injured by a newly manufactured product, even if those measures are taken in response to experience with an older product of the same or similar design.

Therefore we find that such evidence should be excluded unless offered for another purpose as to which a genuine issue is present or for impeachment. It is clear that evidence of remedial measures which is inadmissible for one purpose under Rule 407 would still be available if offered for the purpose of impeachment. However, we need not address the plaintiff's further argument that the decal was admissible to impeach the testimony of the defendant's expert witness, William Eaton. A review of Mr. Eaton's prior testimony regarding the feasibility of precautionary measures would serve no purpose as the question of impeachment is moot in light of our remand for a new trial on the warning issue.

## V.

We find no abuse of discretion in the district court's refusal to permit amendment of the pretrial order to include a negligence theory. We also find that the

trial court acted properly in refusing to admit the 1980 warning decal as evidence of culpable conduct. However we find that the trial court's refusal to charge on the issue of defect for failure to warn was erroneous as a matter of law requiring remand for a new trial on this issue.

In accordance with the foregoing we will vacate the district court's grant of a directed verdict for the defendant, and we will remand for a new trial consistent with this opinion.